UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEBORAH OSBORN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. A-04-CA-158 LY |
| | § | |
| COMPUTER SCIENCES CORPORATION | § | |
| and TIM FISHER | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT TIM FISHER'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Deborah Osborn ("Osborn") files this Response to Defendant Tim Fisher's Motion for Summary Judgment, and respectfully shows the Court as follows:

### INTRODUCTION

1.  The Equal Pay Act broadly defines an employer as, "any person acting directly or indirectly in the interest of an employer in relation to an employee…" 29 U.S.C. § 203(d). The statute contains no limitations on the type of company an individual may work for while fitting this broad definition. Deposition testimony in this case concedes that Defendant Tim Fisher ("Fisher") had the power to hire, fire and reassign Osborn, an act that is indisputably in the interest of Fisher's co-defendant, Computer Sciences Corporation ("CSC"). In spite of this evidence and disregarding the language of the controlling statute, Fisher has asked this Court to render summary judgment that he is not an employer as defined by the Equal Pay Act. The motion should be denied.



## FACTUAL BACKGROUND

2.  Plaintiff Deborah Osborn ("Osborn") was employed by Defendant CSC (and formerly by Continuum, a related entity that was acquired by or merged with CSC) for approximately 13 years. Exhibit A. Her tenure with CSC ended in March 2003 when Defendant Tim Fisher selected Osborn for dismissal as part of a company layoff / reduction in force. *See* Exhibit B, Defendant CSC's Objections and Responses to Plaintiff's Interrogatories to Defendant CSC (CSC's Interrogatory Responses"), Response No. 4 to CSC; Exhibit C, Defendant Tim Fisher's Objections and Responses to Plaintiff's Interrogatories to Defendant Tim Fisher ("Fisher's Interrogatory Responses"), Response No. 2.

3.  CSC's policy governing layoffs provides the criteria and company rules to be used in selection of employees for layoff. *See* Exhibit D, Computer Sciences Corporation Human Resources Management Policy. Osborn's contention in this lawsuit is that her termination was the result of sex discrimination and retaliation, and not in compliance with CSC's policies.

4.  Prior to her termination, Osborn was transferred between sales groups three times within a fifteen month period. Osborn was reassigned in April 2001, and again in October 2001. *See* Exhibit B, CSC's Interrogatory Responses, Responses Nos. 7-10. In July 2002, Osborn was transferred again, this time from CSC's Cost Containment unit to work under the supervision of Brooke Carter in the "enterprise sales" group based in Columbia, South Carolina and assigned a different sales territory. *See* Exhibit B, CSC's Interrogatory Responses, Responses Nos. 7-10

5.  Fisher had a role in each of those decisions. *See* Exhibit B, CSC's Interrogatory Responses, Response No. 6; Exhibit C, Fisher's Interrogatory Responses, Response No. 6.

6.  These transfers to new sales groups occurred in an environment described by management as one in which new license sales are difficult to achieve and require an extended

2

sales cycle of several months and sometimes years. Exhibit E, Excerpts from the Deposition of Matthew Atkinson, p. 26:5-11, p. 50:11-14.

7.      Fisher's sole basis for seeking summary judgment is that he was not an "employer" as defined by the statute. For purposes of this motion, there is no dispute as to the truth of Osborn's allegations regarding the true motivations for her termination. Thus, the only relevant facts are those regarding Fisher's involvement in the decision to terminate Osborn. Therefore, no further factual recitation is necessary in this response.

## ARGUMENTS AND AUTHORITIES

### A.      Summary Judgment Standard.

8.      As the party moving for summary judgment, Fisher has the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The court must view all evidence in the light most favorable to Osborn and draw all reasonable inferences in her favor. *Id.*, 477 U.S. at 255, 106 S. Ct. at 2513. As the party moving for summary judgment, Fisher bears the initial burden of showing the basis for the motion, and of identifying the pleadings and evidence which they believe demonstrates the absence of a genuine issue of material fact. *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121 (5th Cir. 1988). Once a summary judgment motion is made and properly supported, the non-movant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

B.     **"Employer" is Defined Expansively in the Statute.**

9.     The parties agree that an individual can be an "employer" as defined in 29 U.S.C. § 203(d). *See* Defendant Tim Fisher's Motion for Summary Judgment ("Fisher's Motion"), p. 4. The statutory definition of employer has frequently been described as "expansive." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971-72 (citing *Falk v. Brennan*, 414 U.S. 190, 194 (1973)). "The FLSA's definition of employer must be liberally construed to effectuate Congress' remedial intent." *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993), citing *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir.). Indeed, it is well-settled, and Fisher concedes in his motion, that an individual can fit this statutory definition. Fisher's Motion, p. 4; *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987).

10.    Neither is it necessary that an individual be the sole decision maker with respect to employment decisions.

> "It runs counter to the breadth of the statute and to the Congressional intent to impose a qualification which permits an employer who exercises substantial control over a worker, but whose hiring decisions occasionally may be subjected to a third party's veto, to escape compliance with the Act."

*Carter v. Dutchess Community College*, 735 F.2d 8, 12-13 (2nd Cir. 1984), citing *Falk*, 414 U.S. 190. Thus, it is unimportant whether "Fisher's authority to terminate Osborn in March 2003 was subject to the power of the Human Resources Department to review, approve, or veto such decision." *See* Fisher's Motion, p. 3.

11.    "The term employer includes individuals with managerial responsibilities and 'substantial control over the terms and conditions of the [employee's] work....'" *Lee v. Coahoma County, Mississippi*, 937 F.2d 220, 226 (5th Cir. 1991) (mandate reissued as amended by 986 F.2d 100 to correct a typographical error), citing *Falk*, 414 U.S. at 194; *see also Barfield v. Madison County, Mississippi*, 984 F.Supp. 491, 496 (S.D. Miss. 1997).

C.   **Fisher Has Failed to Establish that He is Not an "Employer".**

12.   Even using only the evidence attached to Fisher's motion, Fisher has failed to establish that he is not an employer under the statutory definition. In his motion, Fisher makes at least two arguments that warrant specific refutation because they misstate the law, and the misstatements reveal the inadequacy of his evidence to establish that he is not an employer as defined by the statute.

13.   First, Fisher contends that an individual must, at least as a practical matter, be an owner or director in order to be an "employer" under the statute. Fisher's Motion, pp. 4-5. Second, Fisher implies that, if the corporation for which a plaintiff works is a large corporation, an employee of that corporation cannot be an "employer" under the statute. *Id.*, p. 5.

1.   **Ownership is Unnecessary.**

14.   Contrary to Fisher's contention, it is not necessary that an individual own all or even a part of the corporation or other entity to meet the statutory requirements of an "employer." *Circle C*, 998 F.2d at 329. Fisher claims, "The cases in which courts have held that an individual defendant was an 'employer' under the EPA have involved individual defendants who were either major shareholders or directors of the corporation." *See* Fisher's Motion, pp. 4-5. Fisher then cites several cases, the first of which is *Circle C*, claiming, "dance club owner's husband who was the 'driving force' behind the corporation." The husband in *Circle C* to whom Fisher refers was Charles Cranford. The *Circle C* court stated, "Charles Cranford does not have an ownership interest in Circle C and does not control the day-to-day operations of Circle C." *Circle C*, 998 F.2d at 329.

15.   The individual need not even dominate the corporation or its administration. It is sufficient that the individual "acts, or has the power to act, on behalf of the corporation vis-a-vis

5

its employees." *Circle C*, 998 F.2d at 329. Another court stated, cited *Circle C*, stating, "Although corporate officers with 'operational control' over an employing entity clearly fall within this definition...the FLSA has also been construed as extending to those 'who, though lacking a possessory interest in the 'employer' corporation, effectively dominate[ ] its administration or otherwise act[ ], or ha[ve] the power to act, on behalf of the corporation vis-a-vis its employees.'" *Freemon v. Foley*, 911 F.Supp. 326, 331 (N.D. Illinois, 1995).

### 2. The Size of the Corporation Is Not Determinative.

16. Following the misstatement of the ownership "requirement," Fisher's motion states, "None of these cases involved individual defendants who were merely employee-supervisors in a major, publicly-held corporation with over $14 billion in annual revenue and 95,000 employees worldwide." Fisher's Motion, p. 5. While technically true, this statement implies that the size of a corporation is relevant to the determination of whether an individual is an employer as defined by the statute.

17. The *Freemon* Court stated, "[E]ven if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, so long as he or she possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual." *Freemon*, 911 F.Supp. at 331.

18. In important respects, the facts of *Freemon* are similar to the facts of this case. The *Freemon* court was considering the definition of "employer" in the context of the Family Medical Leave Act (FMLA), but stated, "we look to the FlSA...to enlighten our interpretation of the term 'employer' under the FMLA." *Freemon*, 911 F.Supp. at 330. The plaintiff in *Freemon* was a nutritionist at Mount Sinai Hospital Medical Center of Chicago ("Mt. Sinai") Women with Infants and Children (WIC) program, and sued Mt. Sinai and four individuals for violations of

the FMLA. *Id.*, 911 F.Supp. at 328. All four individuals sought summary judgment that they were not liable under the FMLA because they were not employers under the statute. The court denied three of the individuals' motions.

19. Two individuals whose motions were denied in *Freemon* had merely recommended that the plaintiff be terminated. The court stated, that two of the individuals "recommended that Plaintiff be terminated because of her absenteeism, and [the third individual whose motion was denied] directed them to suspend (and later discharge) [the Plaintiff]." *Id.*, 911 F.Supp at 331.

20. While there is no comment in the *Freemon* opinion as to Mt. Sinai's annual revenues or number of employees, this hospital is well-known as a very large hospital in Chicago. The size of the organization, however, is not determinative. As indicated by the *Freemon* opinion, the determinative factor is whether the individual had control over the "aspect of employment alleged to have been violated." *Id.*, 911 F.Supp. at 331. Clearly, the individual employer need not be the employer of all or even a substantial portion of the employees within the organization. Only the individual's relationship to the plaintiff is important.

**D.      Fisher is an "Employer" Under the Statutory Definition.**

21. Fisher himself admitted that he was a "key part" of the hiring process at CSC.

> Q. So is it your testimony that you do not have the power to hire employees at CSC?
>
> A. I would have to say that it's my testimony that I'm a key part of that process, but that the people I just discussed, perhaps others, are integral in that process and it's a collective effort.

Exhibit F, Excerpts from the Deposition of Tim Fisher ("Fisher Deposition"), 10:1-6.

22. The uncontroverted testimony from the CSC corporate representative establish that Fisher had the authority to hire and fire employees at CSC during the relevant time period.

> Q. Okay. In July of 2002, did Tim Fisher have the authority to hire and fire?

7

    A.    Yes. With appropriate approvals, yes.

Exhibit G, Excerpts from the deposition transcript of Debi Stafford, the corporate representative of Defendant CSC ("CSC Deposition"), 198:7-9.

    Q.    In March of 2003, did Tim Fisher have the authority to hire or fire employees?

    A.    Yes.

    Q.    In March of 2003 -- in March of 2003, did Tim Fisher have the authority to assign or reassign employees in his group from manager to manager?

    A.    Yes.

CSC Deposition, 197:6-12.

    Q.    In July or August of 2002, did Tim Fisher have authority to require managers under his supervision to reassign or assign territories among their particular salespeople?

    THE WITNESS: Would you repeat that for me?

    (QUESTION READ BACK BY REPORTER)

    A.    Yes.

CSC Deposition, 199:9-15.

    Q.    In April of 2001, did Tim Fisher have authority to assign sales employees in the property and casualty group from one manager to another?

    A.    April of 2001? I believe so, yes.

CSC Deposition, 200:4-7.

    Q.    In April of 2001, did Tim Fisher have authority to determine which salesperson would get paid commission on a particular sale?

    A.    Yes.

CSC Deposition, 200:16-19.

    Q.    Did Tim Fisher have authority to include an employee in the reduction in force in March of 2003?

    MS. BOWERS: Objection, form.

      A.      So the answer to that is, yes, subject to the final approval by HR.

CSC Deposition, 200:23-201:8 (off the record comments omitted).

23.    Furthermore, Fisher was directly involved in the decision to terminate Osborn's employment at CSC. Exhibit C, Fisher's Interrogatory Responses, Response No. 2. Fisher was also directly involved in the decisions to transfer Osborn between departments. Exhibit B, CSC's Interrogatory Responses, Responses Nos. 6, 8, 10; Exhibit C, Fisher's Interrogatory Responses, Responses Nos. 6, 7, 8, 10; Exhibit H, Excerpts from the Deposition of John Hatcher, p. 73:10-21.

24.    The facts are clearly established by testimony from Fisher himself and from CSC's designated corporate representative, Debi Stafford, that Fisher played an important role in employment decisions with respect to Osborn. As explained above, and as held by the *Freemon* court, this is more than enough to establish that Fisher is an "employer" as defined by the statute. Therefore, Fisher's Motion for Summary Judgment should be denied.

## CONCLUSION

25.    For these reasons, Plaintiff Deborah Osborn respectfully requests that this Court deny Fisher's Motion for Summary Judgment, and grant all other relief to which Plaintiff may show herself justly entitled.

Respectfully submitted,

Stephen Greenberg, Attorney at Law
State Bar No. 08390100
1010 Land Creek Cove, Suite 250
Austin, Texas 78746
Phone: 512 / 328-6888
Fax: 512 / 328-1444

McGINNIS, LOCHRIDGE & KILGORE, L.L.P.
Joe Edward Lea, Jr.
State Bar No. 12082000
Michael E. Lovins
State Bar No. 24032555
1300 Capitol Center
919 Congress Avenue
Austin, Texas 78701
(512) 495-6000
(512) 495-6093 FAX

By: _____
    Michael E. Lovins
    State Bar No. 24032555

ATTORNEYS FOR DEBORAH OSBORN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served by certified U.S. Mail, return receipt requested, and facsimile transmission upon counsel for Defendants, Mr. Kevin Sadler and Ms. Allison Bowers, Baker Botts, LLP, 1500 San Jacinto Center, 98 San Jacinto Blvd., Austin, Texas 78701, on the 7th day of March, 2005.

_____
Michael E. Lovins

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

## NOTICE OF DOCUMENT(S) NOT IMAGED AND CONTAINED IN FOLDER

Civil Case No.         A-04-CA-158-LY

Deborah Osborn

VS.

Computer Sciences Corp., et al.

Attachments to
Document #:           22

Description:          attachments to response to msj

Filed By:             pltf

File Date:            3/7/05

*[signature]*
_____
DEPUTY CLERK